19 F.3d 28
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William W. PATTON, M.D. Plaintiff-Appellant,
v.
The EASTERN IDAHO REGIONAL MEDICAL CENTER, and Healthtrust,
Inc., Defendants-Appellees.
 No. 92-36805.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1994.
Decided Feb. 18, 1994.
 
 Before: GOODWIN, SCHROEDER, and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 William W. Patton, M.D. appeals from the grant of summary judgment in favor of Eastern Idaho Regional Medical Center and Healthtrust, Inc. (collectively, the "defendants") in his suit alleging violations of the Sherman Antitrust Act, 15 U.S.C. Sec. 1 and Idaho Antitrust Laws, Idaho Code Sec. 48-101, et seq. We affirm because we find that Dr. Patton has failed to allege an antitrust injury sufficient to confer standing under the antitrust laws.[1]
 
 
 3
 Section 4 of the Clayton Act, 15 U.S.C. Sec. 15, defines the class of persons who may maintain private damage actions under the antitrust laws. The statute reads very broadly, stating that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore."
 
 
 4
 However, courts have not interpreted section 4 to be as expansive as its literal language suggests. The Supreme Court has required plaintiffs to show that they suffered an antitrust injury in order to assert a section 4 claim. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1976). An antitrust injury is defined as "the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Id.
 
 
 5
 In determining whether a party has standing to bring an antitrust suit, courts must examine five factors: 1) the specific intent of the alleged conspirators; 2) the directness of the injury; 3) the character of the damages, including the risk of duplicative recovery, the complexity of apportionment, and their speculative character; 4) the existence of other, more appropriate plaintiffs; and 5) the nature of the plaintiff's claimed injury. R.C. Dick Geothermal Corp. v. Thermogenics, Inc., 890 F.2d 139, 146 (9th Cir.1989) (en banc) (citing Associated General Contractors v. California State Council of Carpenters, 459 U.S. 519, 535 (1983)). No single factor is decisive. Id. The relevant factors are discussed below.[2]
 
 A. Nature of Plaintiff's Claimed Injury
 
 6
 Dr. Patton argues that he has standing under the antitrust laws because he was personally harmed by the nonrecruiting agreement. He contends that he lost opportunities for professional advancement due to the double on-call schedule he was forced to work because of the defendants' alleged conspiracy to reduce competition. Specifically, he alleges that he lost the opportunity to join an Open Heart and Cardiac Bypass team at EIRMC, reducing his lifetime earning potential. Dr. Patton's complaint also seeks damages for increased personal and professional stress and increased medical malpractice liability exposure. Complaint p 17.
 
 
 7
 The damages claimed by Dr. Patton are not the type of injuries that the antitrust laws were intended to remedy. The Sherman Act's purpose was to "assur[e] competition and protect[ ] the economic freedom of participants in the relevant market." Ostrofe v. H.S. Crocker Co., Inc., 740 F.2d 739, 741 (9th Cir.1984). In essence, Dr. Patton is claiming that because of a shortage of competition in his field, he became overworked and suffered negative consequences both professionally and personally. These alleged harms are remote from the type of harms that the Sherman Act was intended to attack: namely, reduced competition and inflated consumer prices.
 
 B. Existence of More Appropriate Plaintiffs
 
 8
 Assuming a conspiracy, more direct victims existed than Dr. Patton. He was neither a consumer nor a competitor in the market in which trade was allegedly restrained. More direct victims would have included surgeons kept from practicing in the Idaho Falls community or patients who paid higher surgery fees due to a lack of competition among surgeons.
 
 
 9
 Dr. Batson would have been a foreseeable victim since he applied for privileges at the hospital during the alleged conspiracy period. However, Dr. Batson is not a plaintiff in this action. The record is also devoid of allegation and proof of any patients paying higher surgery fees. In contrast, Dr. Patton maintained his active staff privileges throughout this period. He was neither an excluded surgeon nor a surgical patient. In fact, he stood to gain by any alleged conspiracy to reduce competition among existing general surgeons in the Idaho Falls area.
 
 
 10
 "The existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party ... to perform the office of private attorney general." Associated General, 459 U.S. at 542.
 
 
 11
 Finally, Dr. Patton contends that he should have standing because he was the more likely to discover and challenge the allegedly illegal agreement than an outsider. However, he cites no authority that supports this proposition.
 
 C. Directness of the Injury
 
 12
 Directness in the antitrust context means "close in the chain of causation." R.C. Dick Geothermal, 890 F.2d at 147. The Supreme Court has said that courts should exercise caution in expanding the grasp of section 4 to include victims of remote injuries from antitrust violations. "It is reasonable to assume that Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for injury to his business." Blue Shield of Virginia v. McCready, 457 U.S. 465, 477 (1982).
 
 
 13
 A close causal link does not exist between Dr. Patton's asserted injuries to his professional career and personal life and the defendants' alleged antitrust violation. It is far from foreseeable that Dr. Patton would lose an opportunity to become the second surgeon on the EIRMC cardiac bypass team as a result of an alleged conspiracy to keep surgeons from relocating to Idaho Falls. Although it may have been foreseeable that the alleged conspiracy would result in Dr. Patton's overwork and stress, this injury, as discussed above, is not a cognizable antitrust injury.
 
 
 14
 We hold that Dr. Patton does not have standing to bring this suit because (1) the injury he alleges is not an antitrust injury within the meaning of Brunswick, and (2) he was not the proper plaintiff to bring this suit. Assuming a conspiracy, more direct victims exist, the injuries he alleges are remote and tangential to the alleged antitrust violation, and he stands to gain from the alleged anticompetitive activities. Because we find that Dr. Patton lacked antitrust standing to bring this suit, we need not discuss his other assignments of error.[3]
 
 
 15
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In his assignments of error, Patton argues that the district court failed to discuss the standing issue, even though Patton filed a specific objection to the magistrate judge's report and recommendation on the issue
 It is true that nowhere in his order does the district judge use the term "standing." However, he appears to have addressed the issue in the context of failure to state an injury in fact. The district court found that Patton had failed to state an injury because as a general surgeon in Idaho Falls, he stood to gain from any alleged conspiracy to ban recruiting of general surgeons.
 
 
 [2]
 Defendants argue that we should apply the "target area" approach in determining an antitrust plaintiff's standing. See Parks v. Watson, 716 F.2d 646, 658 (9th Cir.1983). However, this court has acknowledged that the Ninth Circuit's "target area" approach was "explicitly rejected" by the Supreme Court in Associated General Contractors. Dick Geothermal, 890 F.2d at 146 (citing Associated General, 459 U.S. at 536 n. 33)
 
 
 [3]
 Patton also argues that the district court committed reversible error by failing to address three objections he made to the magistrate judge's report and recommendations, including his finding that an outside surgeon was a more appropriate plaintiff to bring this suit. This argument is without merit
 In Longmire v. Guste, the Fifth Circuit held that "in the absence of evidence to the contrary," the court would assume that the district court "did its statutorily commanded duty" under Federal Rule of Civil Procedure 72 to conduct a de novo review of the magistrate judge's report and recommendations. 921 F.2d 620, 623 (5th Cir.1991). We must assume that the district judge did his statutorily commanded duty since Dr. Patton has not introduced any specific evidence to the contrary.